Strafford,
June 27, 1935.

HAVERHILL SHOE NOVELTY CO. *v.* LEADER SHOE CO. & *Tr's.*

STEPHEN W. SCRUTON *v.* CONRAD E. SNOW *& a, Assignees.*

*Cooper & Hall (Mr. Hall* orally), for the plaintiffs.

*Conrad E. Snow,* for the trustees and assignees.

ALLEN, C. J. The attempted common-law assignment ran to three assignees of whom two were non-residents. By statute (Laws

1933, *c.* 9), "No instrument by which title to . . . property is conveyed . . . to an assignee . . . for the benefit of the creditors of the assignor shall be valid to transfer the title of the assignor therein unless such assignee . . . is a resident of this state, . . . ."

The language is most precise to express the inefficacy of the instrument to divest the assignor of the title to its property sought thereby to be transferred to non-resident assignees. As to them, the assignor retained its title unimpaired by its futile attempt to convey it.

But it is claimed that a term of the instrument making "nugatory" any of its provisions contrary to local law operates to eliminate the defect. The argument is that the non-resident assignees being disqualified, the instrument is to be read as though they were not parties to it, thus vesting the resident assignee with full title.

The answer is that the term had no reference to the qualifications of the assignees. As expressed, "it is agreed by and between the parties" to the instrument "that any provision herein contained which is contrary to the laws of said State . . . shall be deemed nugatory." The assignees were parties to the instrument, and not provisions of it. The instrument undertook to give title, control and management to the three assignees as a body. They were the "parties of the second part." A minority of them, or in fact any less than their full number, had no grant of full title and authority by force of the fact that the others were ineligible. It was the definite and only intention that a majority should be non-residents. The grant to them being void, nothing at all was effected. To hold that a minority might have the title and authority of all would be to judicially redraft the instrument against the purpose and will of the parties. Failure of non-residents to control was a failure of the plan.

If it was intended that the instrument should comply with legal requirements, the fact remains that it does not. The instrument on its face shows its invalidity, and an expression of intent that it should conform with the law does not controvert its non-conformity. Legality may not displace illegality when only a disclaimer of illegality appears. If it were applicable to the selection of the assignees, the clause referring to illegal provisions is not available to bring about a rearrangement of the instrument in fundamental respects. The provision that any illegal terms shall be treated as nugatory and thus to be stricken out may be sufficient for their rejection, but legal ones in substitution are not thereby supplied if they are unspecified and uncertain. If the instrument fails for lack of essential terms, it is wholly ineffective. The suggestion that the doctrine of *cy pres* be

invoked disregards its usual limitation to charitable trusts in application and to modifications not inconsistent with the general scheme. It was here a part of the scheme that the trust should have non-resident administration.

Since the plan for non-resident control failed, the transaction became a nullity, and the resident assignee's participation as one of the full number has no saving force.

There is no merit in the point that the equitable principle that a trust will not fail for lack of a named trustee, avails to give the assignment validity and precedence over the attachments. When they were made, title was in the assignor. If this fact might be met and the unwritten law might give effect to an assignment for the benefit of creditors when no assignee is named, the evident purpose of the statute is to nullify the assignment in its entirety when the attempt is to assign to a non-resident. The non-resident's incapacity to take title is inclusive of a bar of possession and charge of the property independent of the control of a qualified assignee. An assignment effective from its date as to the assignor and third parties but not, in the nature of things, operative in acceptance until a judicial appointment of an assignee is later made, would create a strange, anomalous and impractical situation. If a common-law assignment for the benefit of creditors does not contemplate an actual transfer of title to a named assignee upon its initial establishment, the reasonable construction of the statute clearly discloses its implications to impose a destructive effect upon the transaction in all aspects.

Since the title to its property remained in the assignor when the attachments were made, it was error to discharge them. And the trustee-process held for any "money, goods, chattels, rights or credits of the defendant" in the possession of the trustees. P. L., c. 356, s. 19.

The invalidity of the assignment on the ground considered renders it unnecessary to pass upon other points affecting the validity of the attachments.

*Exceptions sustained.*

All concurred.